Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
 *********** MOTION RULING
Plaintiff's 23 June 1998 correspondence to the Commission, treated as a Motion to prohibit ex parte contact between defendants and plaintiff's physicians is hereby dismissed as moot.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence, including:
 a. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act;
 b. An Employer-Employee relationship existed between plaintiff and defendant-employer at all relevant times; and,
 c. Key Risk Management Services, Inc., became the Third-Party Administrator for the self-insured defendant-employer on or about 1 April 1996. Before that date, defendant-employer was self-funded and self-administered.
2. A Form 22 and attached documents marked as exhibit stipulated 1 were received into evidence.
3. A black index of medical records marked as exhibit stipulated 2 was received into evidence.
4. A letter dated 17 January 1997 from Timothy Offenberger to Deputy Commissioner Berger was marked as stipulated exhibit 3 and received into evidence.
 ***********
Based upon all of the competent evidence adduced from the record, the undersigned make the following additional:
 FINDINGS OF FACT
1. The Industrial Commission has jurisdiction over the subject matter and parties in this case.
2. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-nine year old male with an Associates Degree from Chabot Community College in California. Plaintiff's work history included over twenty years of service as a police officer in Oakland, California, five years of service as a corporate security officer in Atlanta, Georgia and Charlotte, North Carolina, and over four years of service as a correctional officer with defendant-employer.
3. At the time of his compensable injury by accident on 18 January 1995, plaintiff worked for defendant-employer as a surveillance officer in an intensive probation program administered through the probation and parole office in Stanley County. Plaintiff's primary job duty required him to closely monitor criminals who had been placed on supervised probation.
4. On 18 January 1995, plaintiff was traveling to meet with one of his probation clients when he became involved in a compensable vehicular accident whereby he struck his head on the windshield and experienced a temporary loss of consciousness. Plaintiff felt trapped inside his vehicle and feared that he would be killed as a result of an explosion by the vehicle. As a result of this compensable injury by accident, plaintiff sustained injuries to his back, right knee, right shoulder, brain and teeth.
5. As of 1 November 1996, plaintiff had reached maximum medical improvement with regard to the brain, right leg, back, and right arm injuries that he had sustained as a result of the 18 January 1995 compensable injury by accident.
6. As a direct and natural result of the 18 January 1995 compensable injury by accident, plaintiff sustained a five-percent permanent partial disability to his back.
7. As a direct and natural result of the 18 January 1995 compensable injury by accident, plaintiff sustained a twenty-percent permanent partial disability to his right leg.
8. As a direct and natural result of the 18 January 1995 compensable injury by accident, plaintiff sustained a twenty-percent permanent partial disability to his right arm.
9. As of 8 August 1996, plaintiff has been physically able to do work within the following permanent restrictions: no lifting more than twenty pounds, no squatting, no repetitive bending, and no overhead lifting.
10. As a direct and natural result of the 18 January 1995 compensable injury by accident, plaintiff has sustained ongoing post-traumatic stress disorder, depression, and a panic disorder.
11. Plaintiff has not reached maximum medical improvement with regard to his ongoing post-traumatic stress disorder, depression, and panic disorder.
12. The medical treatment provided by Dr. Gellar for plaintiff's ongoing post-traumatic stress disorder is reasonably necessary to lessen plaintiff's disability and/or relieve his mental pain. Medical treatment that includes individual psychotherapy sessions at weekly or biweekly intervals and group therapy sessions in a day hospital program is reasonably necessary to effect a cure, relieve plaintiff's mental pain and/or lessen his disability.
13. As a result of the 18 January 1995 compensable injury by accident and resulting post-traumatic stress disorder, depression and panic disorder, plaintiff has been unable to earn any wages since 27 November 1996 to the present, and continuing.
14. There is a risk that plaintiff will commit suicide if he continues to feel that he is a burden on everyone and that he has no future. There is a risk that plaintiff will commit suicide if he continues to believe that defendants and their agents are dealing with him in a manner indicative of a view that plaintiff's physical and mental problems are not valid. Plaintiff was a likely risk to commit suicide after the independent medical evaluation by orthopedic surgeon, Dr. Dupuy. Plaintiff had become markedly anxious over Dr. Dupuy's opinion that plaintiff could return to work despite plaintiff's anxiety. Dr. Gellar was able to successfully coax plaintiff into voluntarily agreeing to be committed at the psychiatric ward to the Presbyterian Hospital.
15. As a direct and natural result of the 18 January 1995 compensable injury by accident, plaintiff has sustained permanent organic damage to his brain. Plaintiff has sustained permanent impairment to both hemispheres of his brain. Dr. Gellar testified that plaintiff suffered brain damage as a result of injuries sustained in his 18 January 1995 accident, and felt that his impression of plaintiff's brain impairments was corroborated by the results of Dr. Mannings' neuropsychological testing. $15,000 is a proper and equitable amount of compensation to be paid by defendants to plaintiff for this brain damage.
16. As a direct and natural result of the 18 January 1995 compensable injury by accident, plaintiff sustained damage to his top right molar and his last tooth on the top left hand side of his mouth.
17. As a direct and natural result of the 18 January 1995 injury by accident, plaintiff developed a deep vein thrombosis in his right leg following the use of a tourniquet during knee surgery performed by Dr. Dickerson.
18. A hospital bed was reasonably necessary to help relieve plaintiff's pain for the time period beginning May 1995 to December 1995. During this period, plaintiff rented a hospital bed on a monthly basis. A hospital bed was not reasonably necessary to help lessen plaintiff's disability, relieve his pain and/or effect a cure for the period beginning January 1996 through the date of Dr. Dickerson's deposition on 5 May 1997.
19. A ramp leading into the front door of plaintiff's trailer was reasonably necessary to relieve plaintiff's pain and lessen his disability. The actual ramp and deck that was constructed in the front and back of plaintiff's trailer was not reasonably necessary to effect a cure, relieve plaintiff's pain or lessen his disability. All but $250.00 of the total cost of the two ramps and decks should be paid by plaintiff out of his ordinary income.
20. A bedside commode, lumbar support cushion, and a rolling platform walker have been reasonably necessary in order to effect a cure, relieve pain, or lessen plaintiff's disability.
21. Immediately following the compensable injury by accident, plaintiff's wife provided attendant care to plaintiff for the period beginning 18 January 1995 through 24 January 1995. Immediately following the rotator cuff surgery that Dr. Dickerson performed on plaintiff's right shoulder, plaintiff's wife provided attendant care to plaintiff for the period beginning 28 April 1995 through 4 May 1995. Plaintiff's wife provided attendant care on an average of seventeen hours per day during these periods. The attendant care provided by plaintiff's wife during these periods was reasonably necessary to lessen plaintiff's disability and/or relieve his pain. The equitable rate of pay for such attendant care is $6.00 per hour.
22. In a letter dated 30 November 1995, defendants agreed to reduce its claim against the proceeds that plaintiff received in a settlement with the third party tortfeasor by accepting a distribution of the proceeds on a pro-rata basis.
23. On 18 January 1995, plaintiff's average weekly wage was $439.15.
24. Defendants have not engaged in stubborn, unfounded litigiousness.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to receive ongoing temporary total disability compensation in the amount of $292.78 per week beginning 19 January 1997 to the present, and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to have the defendants pay for medical treatment for all injuries resulting from the 18 January 1995 compensable injury by accident to the extent that such treatment is reasonably necessary to effect a cure, give relief and/or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to elect to receive permanent partial disability compensation in the amount of $292.78 per week for forty weeks for his right leg injury, $292.78 for forty-eight weeks for his right arm injury, $292.78 for fifteen weeks for his back injury and $15,000 for the permanent damage to his brain when he reaches maximum medical improvement with regard to his psychological injuries. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-31.
4. Defendants are not entitled to any further lien or subrogation interest against the proceeds plaintiff received in the settlement with the third party tortfeasor.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation in the amount of $292.78 for the time period beginning 19 January 1997 to the present, and continuing until further order of the Industrial Commission.
2. Plaintiff's claim for an election of benefits whereby he could receive permanent partial disability compensation in the amounts of $11711.20 for his right leg, $14053.44 for his right arm, $4391.70 for his back and $15,000 for his brain damage is HEREBY RESERVED.
3. Defendants shall pay for medical expenses incurred or to be incurred for the right shoulder, right leg, back and brain injuries that plaintiff sustained as a result of the 18 January 1995 compensable injury by accident.
4. Defendants shall pay for medical expenses incurred or to be incurred for the post-traumatic stress disorder, depression and panic disorder sustained by plaintiff as a result of the 18 January 1995 compensable injury by accident.
5. Defendants shall pay for medical expenses incurred or to be incurred for the treatment of plaintiff's top right molar and his last tooth on the top left hand side of his mouth.
6. Defendants shall pay for medical expenses incurred or to be incurred for the treatment of plaintiff's deep vein thrombosis in his right leg.
7. Defendants shall pay for the medical expenses incurred by plaintiff as a result of the rental of a hospital bed for the time period beginning May 1995 to December 1995.
8. Defendants shall pay $250.00 directly to plaintiff as a reimbursement for expenses incurred by plaintiff for the ramp to the front door of plaintiff's trailer.
9. Defendants shall pay $1428.00 to plaintiff's wife for the attendant care that she provided to plaintiff for the period beginning 18 January 1995 through 24 January 1995 and the period beginning 28 April 1995 through 4 May 1995.
10. Defendants shall pay for the purchase of a lumbar support cushion for plaintiff.
11. Defendants shall pay for the medical expenses incurred for the use of a bedside commode and rolling platform walker by plaintiff.
12. Defendants shall pay an expert witness fee of $700.00 to Dr. Manning.
13. Defendants shall pay the costs.
14. Dr. Gellar is approved to serve as plaintiff's treating physician for his psychological injuries resulting from the 18 January 1995 injury by accident.
15. The 5 August 1997 Order entered in this matter by Deputy Commissioner Berger shall remain in effect.
 *********** S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER